# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

IN RE:

Richard Levern Johnson, Sr., dba
Johnson's Janitorial Services, LLC,


Debtor.

C/A No. 10-5019-DD

Chapter 13

**ORDER**

This matter is before the Court for a confirmation hearing on Richard Levern Johnson,

Sr.'s ("Debtor") amended chapter 13 plan filed October 7, 2010.  An Objection to Confirmation

("Objection") was filed by University Motor Company, Inc. ("Creditor") on July 19, 2010,[1] and

Debtor filed a Response on October 7, 2010.  A hearing was held on October 18, 2010.  Pursuant

to Fed. R. Civ. P. 52, made applicable to this proceeding by Fed. R. Bankr. P. 7052 and 9014, the

Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Debtor filed a petition for chapter 13 relief on July 14, 2010.  Debtor owns and operates a

commercial cleaning business.  Debtor's Schedules I and J indicate that after business expenses

and other deductions, Debtor earns an average income of $3,336.00 a month and incurs monthly

expenses of $1,457.00, leaving him with monthly disposable income of $1,879.00.  Debtor's

Schedule D indicates he has approximately $94,856.00 in secured debt not including taxes, and

his Schedule F discloses $3,806.00 of unsecured nonpriority debt.  In addition to these debts,

Debtor has $44,067.25 in tax debt, $27,806 of which is secured and $5,719 of which is priority

debt.  Debtor testified that the primary reason for his bankruptcy filing was to deal with his tax

debt.  Debtor also testified that before his filing he had gotten behind on his mortgage payment.

---

[1] The objection was filed in connection with an earlier version of the plan.  The amended plan filed October 7, 2010
did not change the treatment to which University Motors had objected.

Debtor's secured debt includes two debts to Creditor.  Debtor owes $13,087.03 to Creditor on a 2004 Chevrolet Silverado ("Silverado") and $12,406.94 on a 2006 Cadillac DTS Sedan ("Cadillac").   Debtor purchased the Silverado in January 2010 for $14,295.00.  Debtor made a $2,500 down payment on the Silverado at the time of purchase, leaving an unpaid balance of $11,795.00.  Debtor entered into a contract with Creditor to pay the remaining balance in monthly installments of $501.15, plus 29 percent interest.  Debtor testified that he purchased this truck primarily for business use.[2]

Debtor purchased the Cadillac in March 2010.  Debtor testified that a sales representative from Creditor contacted him to tell him about the vehicle and to inquire if Debtor was interested in purchasing it.  Debtor traded in another vehicle he had previously purchased from Creditor for the Cadillac and also made a $240 down payment.  Debtor financed the remaining balance of $12,720 with Creditor, payable in monthly installments of $533, again at 29 percent interest.

Debtor owns and operates a commercial janitorial service.  He testified that he needs both the Silverado and the Cadillac due to the nature of his work.  Debtor stated that he has to leave the Silverado at his worksites for it to be loaded with debris and other trash, which he disposes of once a job is completed.  Because Debtor has to leave the Silverado at the jobsites, it is unavailable for personal use, and Debtor needs a personal vehicle.  Debtors' Schedule B lists four other vehicles, all of which Debtor has surrendered in his plan.  Debtor testified that shortly prior to his bankruptcy filing, he lost two commercial cleaning contracts that generated a significant amount of revenue for his business.

---

[2]  A principal of Creditor testified at Debtor's confirmation hearing that the contract between the parties prohibited Debtor from using the vehicle for business; however, he was unable to find this provision in the contract when asked to do so. Cross-examination suggested that the sales representative who sold Debtor the Silverado may have known of Debtor's purpose for the vehicle.  The contract form contains selection blocks that may be used to designate business or consumer purposes for the purchase.  Neither block on Debtor's contract is checked.

## CONCLUSIONS OF LAW

Creditor argues that Debtor's plan fails to comply with 11 U.S.C. § 1325 because it was not proposed in good faith and is not feasible. Additionally, Creditor challenges the amount of interest it receives under Debtor's plan. Based on Debtor's schedules, plan, and testimony at his confirmation hearing, the Court finds that Debtor's plan has been proposed in good faith, is feasible, and should be confirmed. The Court also finds that Creditor is not entitled to an increased rate of interest, and therefore should receive 5.25 percent, as provided in Debtor's plan.

### I.  Good Faith and Feasibility

Bankruptcy courts must confirm chapter 13 plans that comply with 11 U.S.C. § 1325. Section 1325(a)(3) provides that "the plan [must be] proposed in good faith and not by any means forbidden by law." The term "good faith" is not defined in the Bankruptcy Code. Courts in the Fourth Circuit use a totality of the circumstances test to determine whether a debtor has acted in good faith in proposing his chapter 13 plan. *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982); *In re Allawas*, 2008 WL 6069662, at *3 (Bankr. D.S.C. Mar. 3, 2008). When engaging in this analysis, courts often consider a number of factors, including: (1) the percentage of repayment creditors will receive; (2) the financial situation of the debtor; (3) the period of time over which creditors will receive payment; (4) the employment history and current and future employment prospects of the debtor; (5) the nature and amount of unsecured claims; (6) any previous bankruptcy filings of the debtor; (7) the honesty of the debtor in disclosing the facts of his case; (8) the nature of the debtor's pre-petition conduct giving rise to the case; (9) the dischargeability of the debtor in a chapter 7; and (10) any other extraordinary or unusual problems of the debtor. *Neufeld v. Freeman*, 794 F.2d 149, 152 (4th Cir. 1986); *Deans*, 692 F.2d at 972; *Allawas*, 2008 WL 6069662, at *3* (citing *In re Hill*, No. 04-04000-W, slip op., at 5

(Bankr. D.S.C. Sept. 1, 2004)).  The court's task in a good faith analysis is to determine whether

the "plan represents an 'abuse of the provisions, purpose, or spirit' of Chapter 13." *Allawas*,

2008 WL 6069662, at *3 (citing *In re Geiger*, No. 03-03550-W, slip op., at 4-5 (Bankr. D.S.C.

June 20, 2003)).

In the present case, the totality of Debtor's circumstances indicates that his plan was

proposed in good faith.  Debtor testified that the reason for his filing was not to avoid paying

creditors, but instead was the need to address tax debt that had become overwhelming. Debtor's

plan proposes to pay unsecured creditors approximately 80 percent of allowed claims. Debtor's

amended plan also surrenders his interest in four vehicles[3] and pays Creditor, and Debtor's other

secured creditors, in approximately 39 months.[4]  Debtor testified that retaining the vehicles under

lien to Creditor was necessary for a successful reorganization.  Debtor has not been engaging in

an extravagant lifestyle and besides his tax debt, has not accumulated large amounts of secured

or unsecured debt.  Debtor has owned and operated his janitorial business for almost nine years

and projects a stable income from this business.  These factors indicate that Debtor's plan was

proposed in good faith and does not represent an abuse of chapter 13.

Creditor's principal "good faith" complaint is Debtor's purchase of two vehicles and the

filing of a bankruptcy petition shortly thereafter.  Creditor testified that the frequency of

customers purchasing vehicles and immediately filing for bankruptcy has increased.  Creditor

complains that under these circumstances it is required to buy the note back from the bank, from

which the Court infers that Creditor finances the purchase of vehicles and sells the notes with

recourse.  Creditor also complains that the used vehicles it sells often fall into disrepair before

---

[3] Debtor testified that two of these vehicles were not in his possession but instead were used and maintained by his children.
[4] Debtor's contracts with Creditor were for 36 months.  Therefore, Creditor will be paid in full in almost the same amount of time that it would have under the parties' contract.

completion of a five year bankruptcy plan.  The purchase of a vehicle and the immediate filing of

a bankruptcy petition can be evidence of a bad faith filing.  However, all the circumstances of a

debtor's case must be weighed, and a single factor does not necessarily tilt the totality of the

circumstances analysis toward a conclusion of bad faith.  Here, the other factors in Debtor's case,

including Debtor's motivation to file, the fact that the two vehicles, although clean and in good

repair, are not luxury vehicles, and the stability of Debtor's business outweigh the evidence

presented by Creditor.

Creditor also challenges the feasibility of Debtor's plan.  This prong of the confirmation

analysis arises from section 1325(a)(6).  While Debtor's budget is tight, his expenses do not

appear "impossibly low," as Creditor claims in its Objection.  Debtor testified that he was willing

to make sacrifices in order for his plan to work.  Debtor did testify that his income can fluctuate;

however, he has always been able to pay himself at least the $4,513.00 listed as his gross

monthly income on Schedule I and sometimes has income in excess of this amount.  Debtor's

business currently has monthly gross revenue of approximately $9,000.  However, before losing

two significant contracts shortly prior to Debtor's bankruptcy filing, Debtor testified that his

business was taking in nearly $14,000 each month.  This is evidence that Debtor can be more

profitable and that Debtor may in fact be able to pay himself more than the $4,513.00 per month

he currently earns.  In sum, while Debtor's budget certainly does not provide Debtor with much

flexibility in his expenses, it does not appear impossible that the case will succeed.  The Court

therefore finds that Debtor's plan is feasible.

## II.  Creditor's Interest Rate

Creditor's final argument is that it should receive more than 5.25 percent interest.  The Court

disagrees.  In *Till v. SCS Credit Corp.*, 541 U.S. 465 (2004), the United States Supreme Court, in

a plurality opinion, held that the appropriate interest rate for chapter 13 debtors is the national

prime rate, adjusted by the bankruptcy court to compensate for the risk of nonpayment.  *Till*, 541

U.S. at 478–79.  Testimony without objection at Debtor's confirmation hearing indicated that the

prime rate is 3.25 percent.  The Court takes judicial notice of the Wall Street Journal prime rate,

effective on the date of the confirmation hearing, at 3.25 percent.  The standard chapter 13 plan

rate of interest in South Carolina is 5.25 percent.  This rate reflects a reasonable upward

adjustment of the national prime rate in order to compensate for the risk of a debtor's

nonpayment.

As a result of *Till*, this Court established an interest rate committee, composed of debtors'

attorneys, creditors' attorneys, and trustees, to make recommendations to the Court concerning

appropriate rates of interest in chapter 13 plans.  South Carolina Local Bankruptcy Rule 3015-6

provides that the interest rate recommended by this committee is presumptively reasonable and

raises an evidentiary presumption that can be rebutted.  The only evidence Creditor presented

with regard to interest rate was that it routinely financed cars at 29 percent due to its customers'

creditworthiness.  Additionally, Creditor failed to comply with Local Rule 3015-6(d) because it

failed to file an Objection and Certification of Interest Rate as required in the Rule.  As a result,

Creditor has not rebutted the presumption of reasonableness.

This Court does not read *Till*'s risk of nonpayment adjustment to be the same as the

creditworthiness factors that go into the initial lending decision.  Instead, the Court believes the

risk of nonpayment referred to in *Till* is the risk that the chapter 13 debtor's plan will not

succeed.  *See In re Deep River Warehouse, Inc.*, 2005 WL 2319201, at *9 (Bankr. M.D.N.C.

2005) ("Because bankruptcy debtors typically pose a greater risk of nonpayment than solvent

commercial borrowers, the approach [] requires a bankruptcy court to adjust the prime rate

accordingly."); *In re Grandfather Mountain Ltd. P'ship*, 207 B.R. 475, 488 (Bankr. M.D.N.C.

1996) (stating that the formula approach requires the court to start with an "appropriate risk-free

interest rate . . . and then add[] an upward adjustment to account for the risk associated with the

debtor, the plan, and the security for the loan"); *In re Oaks Partners, Ltd.*, 135 B.R. 440, 445

(Bankr. N.D. Ga. 1991) (using the formula approach, stating that this approach requires the court

to adjust the risk-free interest rate upward to "take into account risks associated with the debtor,

the security, and the plan"); *In re Sherwood Square Assocs.*, 107 B.R. 872, 885 (Bankr. D. Md.

1989) ("The Court views the risk for which a premium is factored into the interest rate, not as the

risk of default in its broad sense . . . but as the risk of nonrecovery or noncollectability.  This

different perspective reflects the purpose of the premium in a bankruptcy proceeding as

contrasted to the purpose of a lending institution in pricing the terms on which it would choose to

make a new loan."); *In re Fowler*, 83 B.R. 39, 43 (Bankr. D. Mont. 1987) (finding a risk factor

adjustment of 3/4 percent was appropriate due to "Debtor's testimony [that] Plan payments can

easily be made to the secured creditors as proposed, and thus the risk of default is minimal").  In

*Till* the Court noted that other courts generally approve a risk adjustment of between 1 and 3

percent.  *Till*, 541 U.S. at 466.  Creditor has advanced no valid reason why it is entitled to a

higher interest rate.  As a result, Creditor is limited to receiving the 5.25 percent interest rate set

forth in Debtor's proposed plan.

## **CONCLUSION**

For the reasons stated above, the Court finds that Debtor's plan was proposed in good

faith and is feasible.  Creditor is not entitled to a higher rate of interest and should receive 5.25

percent interest as stated in Debtor's amended plan.  Debtor's amended plan, filed October 7,

2010, should be confirmed, and an appropriate order will be entered.


      AND IT IS SO ORDERED.


**FILED BY THE COURT**
**10/27/2010**



     David R. Duncan
     US Bankruptcy Judge
     District of South Carolina

Entered: 10/27/2010